**FOSTER LUMBER COMPANY, INC.,**
Appellee,

v.

**UNITED STATES of America,**
Appellant.

No. 73–1659.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 18, 1974.

Decided July 29, 1974.

Donald H. Olson, Atty., Tax Div., Dept. of Justice, Washington, D. C., for appellant.

Robert J. Vancrum, Kansas City, Mo., for appellee.

Before MEHAFFY, Chief Judge, and LAY and ROSS, Circuit Judges.

MEHAFFY, Chief Judge.

This is a refund suit by the successor in interest of a Missouri corporation to recover a portion of the taxpayer's 1967 federal corporate income tax payment. The taxpayer bases its claim on a recomputation of its 1967 tax liability to include the carryback of a net operating loss it had incurred in 1968. The Internal Revenue Service disallowed taxpayer's claim on the ground that the net operating loss in question had been fully absorbed in the recomputation of taxpayer's 1966 tax liability. The district court sustained the taxpayer's refund .claim, and IRS brought this appeal. For the reasons stated below we affirm the judgment of the district court.

The relevant facts have been stipulated and may be briefly stated. In fiscal 1966 the taxpayer realized $7,236.00 of ordinary income and $166,634.00 in net long-term capital gains. In fiscal 1967 the taxpayer realized $114,261.00 of ordinary income and $114,656.00 in net long-term capital gains. In fiscal 1968 the taxpayer suffered a net operating loss of $42,203.00. Pursuant to the provisions of Int.Rev.Code § 172 the taxpayer sought to carry back the 1968 net operating loss to its prior taxable years. The taxpayer first carried the net operating loss back to 1966, and there is no dispute over the taxpayer's recomputation of its 1966 tax liability.

Under the regular corporate income tax rates the 1966 liability was recomputed as follows:

| | |
|---|---|
| Taxable Income as Originally Reported | $173,870.00 |
| Net Operating Loss Deduction | 42,203.00 |
| Recomputed Taxable Income | $131,667.00 |
| Regular Corporate Tax on Recomputed Taxable Income | $ 58,200.00 |

Under the alternative tax provided in section 1201 the 1966 tax liability was recomputed as follows:

| | |
|---|---|
| Ordinary Income Element of Taxable Income | $ 7,236.00 |
| Net Operating Loss Deduction | 42,203.00 |
| Recomputed Ordinary Income Element of Taxable Income | –0– |
| Net Long-Term Capital Gain Element of Taxable Income | $166,634.00 |
| Tax on Recomputed Ordinary Income Element | –0– |
| Tax on Net Long-Term Capital Gain Element | 41,658.00 |
| Alternative Tax | $ 41,658.00 |

The alternative tax method resulted in a smaller 1966 tax liability than that computed under the regular rates, and the parties agree that the section 1201 alternative tax is controlling.

Given the agreement among the parties on the recomputed 1966 tax liability, the sole controversy presented here is over the amount of the net operating loss carryback that is available to be carried forward to 1967. The controlling statutory language, in pertinent part, states that:

> The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried.

Int.Rev.Code § 172(b)(2).

The taxpayer contends that the above-quoted language allows it to carry forward to 1967 the excess of the net operating loss over the amount of the 1966 taxable income to which the loss had been carried:

| | |
|---|---|
| Net Operating Loss | $ 42,203.00 |
| Taxable Income to which NOL Was Carried | 7,236.00 |
| NOL to be Carried Forward | $ 34,967.00 |

IRS contends that section 172(b)(2) allows taxpayer to carry forward only the excess of the net operating loss over the total amount of the taxable income for the year 1966:

| | |
|---|---:|
| Net Operating Loss | $ 42,203.00 |
| Total Taxable Income | 173,870.00 |
| NOL to be Carried Forward | —0— |

Stated somewhat differently, the issue in this case is whether the last phrase of section 172(b)(2), "to which such loss may be carried," modifies "taxable income" as well as the words "prior taxable years."

The taxpayer concedes that its interpretation of section 172(b)(2) is counter to the position announced in Treasury Regulation 1.172–4(b)(ii), but notes that every court which has considered the issue has squarely rejected the position taken by IRS. Naegele v. United States, 32 Am.Fed.Tax R.2d 73–5689 (D.Minn.1973), appeal docketed, No. 73–1921, 8th Cir., Dec. 26, 1973; Olympic Foundry Co. v. United States, 29 Am. Fed.Tax R.2d 72–759 (D.Wash.1972), aff'd per curiam, 493 F.2d 1247 (9th Cir. 1974); Sidney Axelrod, 42 P–H Tax Ct.Mem. ¶ 73,190 (1973), appeal docketed, No. 74–1511, 6th Cir., May 7, 1974; Mutual Assurance Society of Virginia Corporation, 42 P–H Tax Ct.Mem. ¶ 73,177 (1973), appeal docketed, No. 74–1133, 4th Cir., Jan. 28, 1974; Chartier Real Estate Company, 52 T.C. 346 (1969), aff'd per curiam, 428 F.2d 474 (1st Cir. 1970). IRS concedes that the unanimous weight of judicial opinion is, at least thus far, against its position. IRS argues, however, that these cases are merely ill-considered reaffirmations of an allegedly aberrant secondary holding in the original Tax Court decision on this issue, *Chartier Real Estate Company, supra*. Each party also argues that its position is supported by the plain meaning of the statutory language and the policy behind that language.

As one should probably expect in a case involving the Internal Revenue Code, it is impossible to find any plain meaning in the statutory language that would dispose of this controversy. Given the typically tortured wording of the Code, we feel that each of the parties' interpretations presents a plausible reading of section 172(b)(2) on its face. Moreover, the legislative history offers little assistance in ascertaining Congress's intent. Neither party has cited, nor have we been able to find, any legislative history that directly addresses the issue presented in this appeal. We are convinced, however, that the basic policy considerations underlying sections 1201 and 172 decisively support the result reached by the district court.

The basic purpose behind the net operating loss carry back provisions of section 172 is to ameliorate the harsh tax consequences that can result from the necessity of accounting for certain exceptional economic events within the confines of an arbitrary annual accounting period. The purpose behind the alternative tax in section 1201 is to alter the tax rate to reflect the traditionally unique character of income arising out of the sale of capital assets. These purposes are quite distinct, as are the economic events with which they are concerned. IRS contends that the taxpayer's position in this case will result in a double benefit. We agree that the tax benefits of the separate provisions may under certain circumstances be "double," at least in the sense that they are cumulative. But, given the differing purposes behind each benefit, we see no reason why the chance relative timing of basically unrelated economic events should negate the cumulative impact of the separate provisions. Indeed, to hold otherwise would frequently subject otherwise similarly situated taxpayers to significantly different treatment solely on the basis of arbitrary timing; precisely the reverse of section 172's original purpose.

In reaching our conclusion we have carefully examined the Internal Revenue Service's argument regarding the judicial decisions on the issue presently before us. None of the decisions is binding precedent in this court, and several of the opinions are quite brief in their discussion of the issue. Nevertheless,

we cannot dismiss lightly the cumulative weight of our fellow judges' decisions or the divisiveness and administrative confusion that a contrary conclusion at this point might foster.

The judgment of the district court is affirmed.