Sidney AXELROD and Andrea
Axelrod, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL
REVENUE,
Respondent-Appellant.

No. 74–1511.

United States Court of Appeals,
Sixth Circuit.

Dec. 17, 1974.

Rehearing Denied Jan. 17, 1975.

Scott P. Crampton, Asst. Atty. Gen.,
Meyer Rothwacks, Bennet Hollander,
Robert G. Burt, Richard Roberts, Gilbert
E. Andrews, Tax Div., Dept. of Justice,
Meade Whitaker, Chief Counsel, I.R.S.,
Washington, D. C., for respondent-appel-
lant.

Sidney Axelrod, Columbus, Ohio, pro
se.

Robert E. Glaser, Arter & Hadden,
Carlton Schnell, Cleveland, Ohio, for pe-
titioners-appellees.

Before PHILLIPS, Chief Judge, and
PECK and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This appeal requires us to define the
relationship between the alternative cap-
ital gains tax provisions of section
1201(b) of the Internal Revenue Code of
1954, 26 U.S.C. § 1201(b), and the net
operating loss carryback and carryover
provisions of section 172 of the Code, 26
U.S.C. § 172. Specifically, we must de-
termine whether "taxable income,"
against which section 172 of the Internal
Revenue Code requires a net operating
loss carried back to an earlier year to be
offset in determining whether there will
be an excess to carry forward to other
years comprehends only ordinary income
and not income derived from capital
gains accorded special treatment under
the alternative method of tax computa-
tion permitted by section 1201(b).

In 1964, taxpayers had taxable income
of $1,042,032.03, of which $4,999.20 was
ordinary income and of which $1,037,-
032.83 was a net long-term capital gain
computed after the deduction for capital

gains provided for by section 1202 of the Internal Revenue Code.[1] In 1965 and in 1966 taxpayers received no taxable income. In 1967, however, taxpayers incurred a net operating loss of $114,627.75 and, by filing a claim for a refund, carried the loss back to their 1964 taxable year pursuant to section 172 of the Code. Taking into account the net operating loss incurred in 1967, taxpayers recomputed their tax liability for 1964 under both the "regular" method provided for by section 1 of the Code, 26 U.S.C. § 1, and under the "alternative" method provided for by section 1201(b). The computations are as follows:

**"Alternative Method" (Sec. 1201)**

Taxable Income (excluding Net Operating Loss deduction):

| | | |
|---|---|---|
| Ordinary income | $ 4,999.20 | |
| Capital gains income | 2,074,065.66 | |
| | $2,079,064.86 | |
| LESS: Section 1202 deduction | $1,037,032.83 | $1,042,032.03 |
| LESS: Carryback Net Operating Loss deduction from 1967 | | 114,627.75 |
| Taxable Income (Sec. 63(a)) | | $ 927,404.28 |
| LESS: 50% of capital gains income Sec. 1201(b)(1)) | | 1,037,032.83 |
| Balance | | –0– |
| Partial tax on balance (Sec. 1201(b)(1)) | | –0– |
| PLUS 25% tax on capital gains | | 518,516.41 |
| Alternative Tax (1964 individual rates) | | $ 518,516.41 |

**"Regular Method" (Sec. 1)**

Taxable Income (excluding Net Operating Loss deduction):

| | | |
|---|---|---|
| Ordinary income | $ 4,999.20 | |
| Capital gains income | 2,074,065.66 | |
| | $2,079,064.86 | |
| LESS: Section 1202 deduction | $1,037,032.83 | $1,042,032.03 |
| LESS: Carryback Net Operating Loss deduction from 1967 | | 114,627.75 |
| Taxable Income (Sec. 63(a)) | | $ 927,404.28 |
| Regular Tax (1964 Individual rates) | | $ 677,781.30 |

---

1. Section 1202 of the Internal Revenue Code of 1954, 26 U.S.C. § 1202, provides, in relevant part, "In the case of a taxpayer other than a corporation, if for any taxable year the net long-term capital gain exceeds the net short-term capital loss, 50 percent of the *amount of such excess shall be a deduction from gross income.* . . . (Emphasis added.)

Because their tax liability under the alternative method was less than their tax liability under the regular method, taxpayers' actual tax liability was, as required by section 1201(b) of the Code, determined by the alternative method.

The controversy before us arose when taxpayers received ordinary income of $14,785.71 and $17,308.90 in 1968 and in 1969 respectively and sought to carry over to those years a portion of the net operating loss incurred in 1967. They contended that since they recomputed their tax liability for 1964 under the alternative method, they were entitled to carry forward to 1968 and 1969 $109,-628.55, representing the amount by which their 1967 net operating loss exceeded ordinary income received in 1964. The Commissioner, however, disallowed any deduction in 1968 and 1969 on the ground that no excess remained that could be carried forward since, under section 172(b)(2) of the Code, the entire net operating loss had been used in determining taxpayers' taxable income of $927,404.28, as the first step in computing tax liability under the alternative method. Accordingly, the Commissioner assessed deficiencies of $2,260.60 and $758.19 for the taxable years 1968 and 1969 respectively.

On appeal, the Tax Court held that no deficiencies existed for those years and, moreover, that taxpayers were entitled to refunds of $1,885.06 and $3,230.95 for those years. Axelrod v. Commissioner, 32 T.C.M. 885 (1973). This determination was based on its decision in Chartier Real Estate Co. v. Commissioner, 52 T.C. 346 (1969), aff'd per curiam, 428 F.2d 474 (1st Cir. 1970). In Chartier, a case involving a corporate taxpayer which computed its tax liability under the alternative method, the Tax Court held that to the extent that a net operating loss is not offset by ordinary income received in a year to which the loss could be carried back, it could be carried forward to a later taxable year under section 172(b)(2). In applying the same rule to individual taxpayers, the Tax Court explained that its interpretation

serves the basic Congressional policy of granting special favorable tax treatment to capital gains under section 1201(b) without requiring the forfeiture of deductions for net operating losses merely because such losses happen to have occurred within the statutory carryback or carryover period. The opinion preserves intact the Congressional intent to permit the offsetting of the business losses of lean years against the profit of lush years in those situations, described in section 1201(b), where capital gains—unrelated to prior or subsequent net operating losses—are the major factor in computation of tax liability.

This appeal is taken by the Commissioner from the determination of the Tax Court. The Commissioner contends that even though taxpayers computed their 1964 tax liabilty under the alternative method, their taxable income, as defined by the Code, and against which a net operating loss from other taxable years must be offset, exceeded their 1967 net operating loss carryback and that, accordingly, no portion of it remained to be carried forward to 1968 and 1969. Taxpayers concede that if they had computed their tax liability under the regular method, the 1967 net operating loss would have been totally offset by their taxable income, and no portion of it would be left to be carried forward to later taxable years. They argue, however, that by computing their tax liability under the alternative method, the net operating loss was offset only by ordinary income, and that to require them to include capital gain income in "taxable income," against which the loss must be offset, deprives them of the benefits Congress intended to confer upon them when it enacted section 1201(b), the alternative capital gains tax provision. We disagree and reverse.

Section 172, governing the treatment of net operating losses provides, in part, "The portion of such loss [net operating loss] which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss

over the sum of the *taxable income* for each of the prior taxable years to which such loss may be carried." 26 U.S.C. § 172(b)(2) (Emphasis added.)[2]

Congress has defined "taxable income" in the case of individual taxpayers for the purposes of subtitle A of Chapter 1 of Title 26 of the United States Code, sections 1 through 1563 inclusive, as "gross income, minus the deductions allowed by this chapter, other than the standard deduction . . .." Int.Rev. Code of 1954, § 63(a), 26 U.S.C. § 63(a). This is the meaning to be placed on "taxable income" unless expressly modified. In this case, the taxpayers' gross income for 1964 was $2,079,064.86, of which $4,999.20 was ordinary income and of which $2,074,065.66 was net long-term capital gains. Had taxpayers recomputed their tax liability under the regular method, section 1202 would have permitted them a deduction of fifty percent of their net long-term capital gains leaving them with taxable income of $1,042,-032.03 before taking into account the net operating loss. Taxable income, so computed, would have exceeded the net op-

erating loss, and no portion of the loss would have remained to be carried forward to other taxable years.

Taxpayers, however, computed their tax liability in accordance with the provisions of section 1201(b).[3] Under this provision, taxable income is still defined as gross income minus the deductions permitted by the Code. The only difference between this method and the regular method lies in the way in which tax liability is computed. Under the alternative method, an individual's tax liability is the sum of a partial tax imposed on *taxable income* reduced by 50 percent of the excess of the net long term capital gain over the short term capital loss plus an amount equal to 25 percent of the net long term capital gain over the short term capital loss. Taxable income is the same regardless of the method of computation even though the amount of tax due may be different. It follows, therefore, that whether taxpayers compute their tax liability under the regular or the alternative method, the 1967 net operating loss would be entirely offset by their taxable income for 1964.

**2.** In Foster Lumber Co. v. United States, 500 F.2d 1230 (1974), the Eighth Circuit held that the phrase "to which such loss may be carried" modifies both "prior taxable years" and "taxable income." We do not believe that this construction is warranted. When the sentence quoted in the text is read in conjunction with the preceding sentence, providing " . . . the entire amount of the net operating loss for any taxable year . . shall be carried to the earliest of the taxable years to which . . . such loss may be carried," it is clear that the phrase "to which such loss may be carried" modifies only "prior taxable years." A net operating loss is carried only to prior and succeeding taxable years; it is not carried to "taxable income" in those years.

We observe that although the Eighth Circuit's construction of section 172 is the same as that placed upon it in the per curiam affirmances for taxpayers in Olympic Foundry Co. v. United States, 493 F.2d 1247 (9th Cir. 1974) and in Chartier Real Estate Co. v. Commissioner, 428 F.2d 474 (1st Cir. 1970), the Fourth Circuit, in its recent decision in Mutual Assurance Society of Virginia Corp. v. Commissioner, 505 F.2d 128 (1974) rejects

this construction. These cases, other than the Fourth Circuit decision, involved corporate taxpayers which computed their tax liability under the alternative method provided for by section 1201(a) of the Code, 26 U.S.C. § 1201(a), and which were permitted to carry over to succeeding years a net operating loss to the extent that it exceeded ordinary income earned in the taxable year in question.

**3.** Section 1201(b), 26 U.S.C. § 1201(b), provides, in relevant part:

If for any taxable year the net long-term capital gain of any taxpayer (other than a corporation) exceeds the net short-term capital loss, then, in lieu of the tax imposed by sections 1 and 511, there is hereby imposed a tax (if such tax is less than the tax imposed by such sections) which shall consist of the sum of—

(1) a partial tax computed on the *taxable income* reduced by an amount equal to 50 percent of such excess, at the rate and in the manner as if this subsection had not been enacted, and

(2) an amount equal to 25 percent of the excess of the net long-term capital gain over the net short-term capital loss. (Emphasis added.)

As this opinion was being completed, we received from the Commissioner a copy of the recent decision in Mutual Assurance Society of Virginia Corp. v. Commissioner, 505 F.2d 128 (4th Cir. 1974). In that case, the Fourth Circuit, considering the tax liability of a corporate taxpayer which recomputed its tax liability under the alternative method after sustaining a net operating loss in a succeeding taxable year, held that such a loss must exceed taxable income, including capital gains as well as ordinary income, before a portion of it could be carried forward to other taxable years. In so holding, the court concluded that its determination was supported by the language of the statute, the relevant regulations, and the legislative history of section 172.

In addition to the reasons that persuaded both this court and the Fourth Circuit that a net operating loss carried back to an earlier taxable year must exceed taxable income including capital gains before a portion of it might be carried forward to succeeding taxable years, we observe that, in the case of a non-corporate taxpayer, Congress has provided that taxable income be redefined for the purpose of determining to what extent a net operating loss is offset against it. Section 172(b)(2) provides that the taxable income for a year to which taxpayers seek to carry back or forward any net operating loss should be computed in the ordinary manner "with the modifications specified in subsection (d) other than paragraphs (1), (4), and (6) thereof . . .." One of these modifications provides that "the deduction for long-term capital gains provided by section 1202 shall not be allowed." Int.Rev. Code of 1954, § 172(d)(2). The Tax Court did not consider the applicability of this modification in its computation of taxpayers' tax liability; and taxpayers contend that it applies only when tax liability is determined in accordance with the regular method provisions. We find no such limitation in section 172(b)(2) or section 172(d)(2), however, and hold that even if taxpayers compute their tax lia-

bility under the alternative method, the section 1202 deduction may not be taken for the purpose of determining the extent to which net operating loss is offset by taxable income. Therefore, for the purpose of section 172(b) taxpayers' taxable income for 1964 was $2,079,064.86. Accordingly, taxpayers' 1967 net operating loss did not exceed their taxable income for 1964, and they were not entitled to carry forward to 1968 and 1969 any portion of that loss.

This construction of section 172 is supported not only by its language but also by Treasury Regulations promulgated thereunder. These regulations are entitled to judicial deference. In United States v. Cartwright, 411 U.S. 546, 550, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973), the Supreme Court stated:

> We recognize that this Court is not in the business of administering the tax laws of the Nation. Congress has delegated that task to the Secretary of the Treasury, 26 U.S.C. § 7805(a), and regulations promulgated under his authority, if found to "implement the congressional mandate in some reasonable manner," must be upheld. United States v. Correll, 389 U.S. 299, 307 [, 88 S.Ct. 445, 449 L.Ed.2d 537] (1967). See Bingler v. Johnson, 394 U.S. 741, 749-751 [, 89 S.Ct. 1439, 1444, 22 L.Ed.2d 695, ] (1969); Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501 [, 68 S.Ct. 695, 698, 92 L.Ed. 831] (1948).

Treasury Regulation 1.172–4(b)(ii) provides in relevant part:

> The portion of the loss which shall be carried to any of such several taxable years subsequent to the earliest taxable years is the excess of such net operating loss over the sum of the aggregate of the *taxable income* (computed as provided in § 1.172–5) for all of such several taxable years preceding such taxable year which are subject to the Internal Revenue Code of 1954.

And, Treasury Regulation § 1.172–5 provides, in relevant part:

The taxable income for any taxable year subject to the Internal Revenue Code of 1954 which is subtracted from the net operating loss for any other taxable years to determine the portion of such net operating loss which is a carryback or a carryover to a particular taxable year is computed with the modifications prescribed in this paragraph. . . .

(2) Modifications applicable to unincorporated taxpayers only. In the case of a taxpayer other than a corporation, in computing taxable income and adjusted gross income—

(i) No deduction shall be allowed under section 151 for the personal exemption . . . and under section 1202 in respect to the net long-term capital gain.

We do not believe that these regulations are inconsistent with the language of section 172 but are a reasonable implementation of that statute. Accordingly, we uphold and follow them.

We do not believe that this interpretation diminishes the benefits to be derived from the alternative tax provisions which Congress intended to provide taxpayers whose incomes are in large part derived from long-term capital gains. Had taxpayers computed their tax liability under the regular method, they would have had to pay taxes in the amount of $677,781.30 even after deducting the 1967 net operating loss. Computation of their tax liability under the alternative tax provisions enabled them to limit their liability for income derived from long-term capital gains to a tax of twenty-five percent and reduced their tax bill to $518,516.41. They, therefore, received the full benefits to which they were entitled under section 1201(a).[4] See Weil v. Commissioner, 229 F.2d 593 (6th Cir. 1956).

Reversed.

---

4. Our conclusion in this case is strengthened by our observation that had the operating loss at issue in this case occurred during the taxable year 1964, taxpayers would have suffered no net operating loss that could have been carried backward or forward to other taxable years. Section 172(c) of the Code defines "net operating losses" as follows:

> For purposes of this section, the term "net operating loss" means . . . the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d).

In this case, had taxpayers' operating loss occurred in 1964, and had they computed their tax liability under the alternative method, they would have suffered no net operating loss. Gross income would have been the sum of their ordinary income plus their net long-term capital gains, or $2,079,064.86. In computing whether deductions permitted by the Code would have exceeded this amount, section 172(d) specifically provides that the section 1202 deduction shall not be permitted, and, accordingly, taxpayers could have deducted from gross income only their operating loss of $114,627.75. This deduction would not have exceeded gross income and taxpayers would have suffered no net operating loss. We do not believe that taxpayers should be placed in a better position when an operating loss occurs in a year other than the taxable year in question than they would have been in had the loss occurred in that year.