**Robert O. NAEGELE and Roger A. Peterson, Trustees in Voluntary Dissolution of Naegele Advertising Companies, Inc., a Minnesota corporation, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 4–72–Civ. 253.**

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 6, 1973.

John G. Engberg, Helgesen, Peterson, Engberg & Spector, Minneapolis, Minn., for plaintiffs.

John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., for defendant.

MEMORANDUM

LARSON, District Judge.

Plaintiffs are the trustees in the voluntary dissolution of the Naegele Advertising Companies, Inc. (hereinafter Naegele). On behalf of the stockholders of that corporation they allege that the Government assessed and collected taxes substantially in excess of that amount which Naegele owed for the year 1963. This Court's jurisdiction lies under 28 U.S.C. § 1346(a)(1).

The parties have stipulated to the facts, as set forth in the Claim which Naegele filed with the District Director of the Internal Revenue Service in June 1971. In the 1962 tax year Naegele showed a substantial capital gain coupled with an ordinary loss. Further, Naegele had incurred net operating losses in 1958 and 1961 that were carried over and a net operating loss in 1965 that was carried back to 1962, pursuant to the provisions of § 172(b)(1) of the Internal Revenue Code. 26 U.S.C. § 172(b)(1). The total of the net operating losses carried back and carried over to 1962 amounted to $362,571. As required by law Naegele calculated its

1962 tax first under the "normal" method provided for in 26 U.S.C. § 11 and then under the "alternative" method provided for in 26 U.S.C. § 1201.

Section 1201 requires the payment of the amount of tax derived from the "alternative" method of calculation if that amount is less than the amount derived from calculation under § 11. Since Naegele's § 1201 tax in 1962 was less than its "normal" (§ 11) tax, Naegele paid its 1962 income tax pursuant to that "alternative" tax provision.

Section 1201 provides for a tax which is the sum of a tax on the excess of taxable income for the year over net long term capital gain reduced by the net short term capital loss, plus twenty-five per cent of the net long term capital gain reduced by net short term capital loss. Thus the tax is actually twenty-five per cent of the net capital gain figure in any year in which the capital gain figure exceeds taxable income.

Section 172(b)(1) permits corporations to carry net operating losses back three years and forward five years from the year of the loss. Once it has been determined to which year the loss will be carried under the regulation, the loss is then subtracted from that year's taxable income. The carryback-carryover net operating loss figure was utilized by Naegele in the calculation of its § 11 tax. Naegele, however, determined and actually paid its 1962 tax pursuant to § 1201.

In 1962 Naegele's net long term capital gain reduced by its net short term capital loss exceeded its taxable income. Thus the § 172 net operating loss carryback and carryover provisions did not affect the calculation of the tax actually paid by Naegele in 1962.

Naegele now argues that, since its net operating loss carryback and carryovers were not utilized to reduce its taxable income in 1962 it should be permitted to carry that loss forward to 1963, to offset taxable income in that year to the extent allowed by the law. The Government contends that the aggregate net operating loss may not be carried forward because it was used to calculate the § 11 tax and does not exceed the amount of taxable income in 1962. The Government's position was rejected in Chartier Real Estate Co. v. Commissioner, 52 Tax Ct. 346 (1969), aff'd 428 F. 2d 474 (1st Cir. 1970).

This Court follows *Chartier* for the reasons set forth in the tax court's opinion. In the present case there is better reason to grant the taxpayer relief than in *Chartier*. Here the taxpayer did not benefit from any portion of its aggregate net operating loss.[1] In *Chartier* the taxpayer had some ordinary income against which to offset its net operating loss carrybacks. When the taxpayer sought to carry the "unused" portion of the aggregate net operating losses to the consecutive tax year the court held it to be an exaltation of form above substance to deny the taxpayer the benefit of these carrybacks simply because the loss was one of the figures employed in a method of calculation under which no tax was paid. This Court concurs.

The Government has discussed at great length the "ridiculous consequences of taxpayer's position," and has demonstrated that under certain hypothetical circumstances, one dollar in net operating loss could result in thousands of dollars in taxes to the taxpayer. The Court would point out two difficulties with the Government's position. The tax laws and regulations are replete with line-drawing rules and mechanisms, many of which will produce drastically different tax results with the addition or subtraction of one unit measure. Secondly, in tax matters a court must deal with the facts and equities present in the case before the Court, not with imaginary fact situations.

1. As noted above, taxpayer had no ordinary income in 1962. As pointed out in *Chartier*, net operating loss carrybacks and carryovers will not be allowed to offset capital gains. Thus aggregate net operating losses are of benefit to the taxpayer only to the extent to which it has ordinary income in the year to which the losses are carried.

As a consequence of this Court's holding, Naegele is allowed to carry its aggregate net operating loss from 1962 to 1963, and its 1963 tax is that reflected in paragraph 16 of the Stipulations of Fact filed in this matter.