In the Matter of AVIEN, INC., Debtor.

No. 70 B 1085.

United States District Court, E. D. New York.

March 10, 1975.

W. Bernard Richland, Corp. Counsel of the City of New York, New York City, for appellant City of New York by Murray Gingold, Samuel J. Warms, and Raymond Herzog, New York City, of counsel.

Levin & Weintraub, New York City, for appellee Avien, Inc. by Elias Mann, Martin I. Klein, New York City.

## OPINION

NEAHER, District Judge.

This is an appeal by the City of New York ("the City") from a decision of the bankruptcy judge expunging its claim against the debtor for unpaid corporation taxes in the amount of $17,789.32. Decision of the appeal turns upon the correct construction to be placed on the carryforward and carryback loss provisions of the City's General Corporation Tax, Administrative Code of the City of New York, § R46–2.-0(8)(f).

The pertinent facts are not in dispute. On December 24, 1970, the debtor ("Avien") filed a petition for an arrangement under Chapter XI of the Bankruptcy Act and thereafter was continued in the operation of its business. The City, in June 1973, conducted an audit of Avien's books and records for the period from January 1966 through December 24, 1970, with respect to its tax liability to the City. After completion of the audit, the City filed an amended claim in the Chapter XI proceeding which included an item of $17,789.32 for unpaid general corporation tax allegedly accruing in Avien's fiscal year ending June 30, 1968 (together with interest and penalties of $2,018.50).

There is no question that the City's foregoing tax claim is based upon Avien's City General Corporation Tax Report for fiscal 1968, which showed a net income of $286,969.82 *before* net operating loss. Despite that alleged "income", Avien paid no federal taxes in that year because its income was more than offset by the following carryforward losses reported on its federal tax return:

| Fiscal Year Ending | Taxable Income (Loss) |
| --- | --- |
| June 30, 1963 | ($762,423.73) |
| June 27, 1965 | ($156,856.34) |
| July 3, 1966 | ($993,529.48) |
| June 30, 1968 | $282,598.52 [1] |

Avien also reported losses on its federal returns for fiscal 1969 and 1970 of $165,427.60 and $337,177.85 respectively.

In urging the validity of its claim despite Avien's losses, the City contends, in effect, that the carryforward and carryback loss provisions of the City's Administrative Code require a taxpayer to use as an offset against income only the *identical* loss he has used as an offset on the federal return. The City further contends that if other provisions of the City's tax law prohibit the use of that loss for City tax purposes, the taxpayer may not substitute as a deduction a loss from a different year.

---

[1]. As a result of some slight modifications, Avien's reported income for City tax purposes for fiscal 1968 was $286,969.82.

The bankruptcy judge concluded that, in the absence of express legislative history to the contrary, the implicit legislative intent in adopting a carryforward and carryback loss provision, *i. e.*, to allow an averaging of income over a number of years, would best be effectuated by not binding a taxpayer to the loss used on his federal return if that loss did not qualify for City tax purposes. This court agrees.

## I.

The City's tax on corporate net income is imposed under Title R of Chapter 46 of the New York City Administrative Code § 2.0(8), effective January 1, 1966, which provides in pertinent part:

> " 'Entire net income' means net income from all sources which shall be the same as the taxpayer's federal taxable income . . . ."

Subdivision (f) of § 2.0(8) provides in part:

> "A net operating loss deduction shall be allowed which shall be the same as the net operating loss deduction allowed under section one hundred seventy-two of the internal revenue code or which would have been allowed if the taxpayer had not made an election under subchapter s of chapter one of the internal revenue code, except that

> . . . (2) such deductions shall not include any net operating loss sustained during any taxable year in which the taxpayer was not subject to the tax imposed by this part, and (3) such deduction shall not exceed the deduction for the taxable year allowable under section one hundred seventy-two of the internal revenue code . . ."

The City's position is that a city taxpayer, pursuant to § 2.0(8), must report taxable income for City tax purposes which is "the same as" the taxable income reported for federal tax purposes. The latter is determined in accordance with § 63(a) of the Internal Revenue Code of 1954 ("the Code"), which provides in part:

> " '[T]axable income' means gross income, minus the deductions allowed by this chapter . . . ."

One of the allowed deductions is that provided for in § 172 of the Code.[2] The City, therefore, would have the court conclude that the same carryover loss used as an offset for federal tax purposes must be used as an offset for City tax purposes, so that taxable income for City tax purposes will be "the same as" taxable income for federal tax purposes in both final amount and identity of component deductions.

The City further contends that under § 172 a taxpayer *must* first apply the

---

**2.** Section 172 of the Code provides in part:
"(a) Deduction allowed.—There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term 'net operating loss deduction' means the deduction allowed by this subsection.
"(b) Net operating loss carrybacks and carryovers.—
"(1) Years to which loss may be carried.—

"(A)(i) Except as provided in clause (ii) and in subparagraph (D), a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss.
\* \* \* \* \*

"(B) Except as provided in subparagraphs (C) and (D), a net operating loss for any taxable year ending after December 31, 1955, shall be a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss.

\* \* \* \* \*
"(2) Amount of carrybacks and carryovers.—Except as provided in subsections (i) and (j), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the 'loss year') shall be carried to the earliest of the taxable years to which (by reason of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried."

earliest loss as a carryforward before other losses may be used.

■ Applying the foregoing contentions here, the City's position is that in computing Avien's 1968 taxable income for federal tax purposes, the 1963 loss must be applied first and since that loss is sufficient to completely offset 1968 income, no other loss year, *i. e.*, 1965, 1966, 1969 or 1970, need be used. For City tax purposes, however, the 1963 loss is disqualified under § 2.0(8)(f)(2) because the general corporation tax was not effective until January 1, 1966. The City therefore concludes that Avien has taxable income for fiscal 1968 for City tax purposes, with no eligible loss deductions to offset it.

Avien concedes that its 1963, 1965 and pre-January 1, 1966, losses are ineligible as carryforwards for City tax purposes. Avien maintains, however, that it should be permitted to offset against 1968 income, for City tax purposes, its post-January 1, 1966 losses as a carryforward, as well as 1969 and 1970 losses as carrybacks.

■ Concededly, the legislature could, if it so desired, deny a City taxpayer the benefit of a carryover or carryback loss deduction unless the loss sought to be used as a deduction from City income was the identical loss used as a deduction from federal income. The question here · is whether the legislature so intended.

Both sides concede the absence of clarifying legislative history relating to § 2.0(8) of the City tax law. The City argues that the explicit language "the same as" must be construed to mean that a taxpayer's City return is to be identical with his federal return. Otherwise, it argues, there is nothing to prevent a taxpayer from using a different method of depreciation on his City return. The City sees further support for its position in the specific deviation permitted by the City tax law in the case of a subchapter S corporation and the absence of any specific provision permitting substitution of other carryforward and carryback losses when those used in computing federal taxable income are ineligible for City tax purposes.

On the broad question of legislative intent, the City points out that the basis of the City tax is conformity with the federal tax. Conformity is desirable, it argues, in that it enables the City to conduct "desk audits," leaving the bulk of the field auditing to the federal government, which is better equipped to conduct large scale audits. Without such conformity in the instant case, for example, the City would be required to undertake extensive audits which would not otherwise be necessary. This will happen, the City argues, because Avien's only possible tax liability for federal tax purposes relates to income earned in fiscal 1968. Since that income is completely offset for federal tax purposes by 1963 losses, the federal government has no reason to, and consequently will not, audit Avien's returns for 1966, 1969 or 1970, the years in which the losses occurred which are now sought to be used to offset Avien's 1968 income for City tax purposes.[3]

■■ However convenient conformity may be for administration, in construing legislation the court is bound to give effect to its primary purpose, even if to do so the court must depart from a literal reading of the legislation. Le Drugstore Etats Unis, Inc. v. New York State Board of Pharmacy, 33 N.Y. 2d 298, 352 N.Y.S.2d 188, 307 N.E.2d 249 (1973); Abood v. Hospital Ambulance Service, Inc., 30 N.Y.2d 295, 332 N.Y.S.2d 877, 283 N.E.2d 754 (1972); Hogan v. Culkin, 18 N.Y.2d 330, 274 N. Y.S.2d 881, 221 N.E.2d 546 (1966); Petterson v. Daystrom Corporation, 17 N.Y.2d 32, 268 N.Y.S.2d 1, 215 N.E.2d 329 (1966). Manifestly, the intention of the legislature in providing for carryforward and carryback loss deductions was to permit a City taxpayer to pay tax on an amount which more accurately reflects his true economic gain over a pe-

---

3. Appellant's Brief at 20–21.

riod of years. Such a provision might, presumably, be a factor in inducing a corporation to relocate or remain in the City.

To adopt the City's construction of § 2.0(8) would undermine this legislative intent. This is exemplified by Avien's situation here. Avien's true City income after January 1, 1966 consists of both losses and profits, a situation clearly within the purview of the carryforward and carryback loss provisions of the City tax law. Yet, according to the City, despite post-1966 losses, Avien must, nonetheless, pay City tax on its 1968 income because for Federal tax purposes it used pre-January 1, 1966 losses.[4]

■ Rather, it seems clear the legislature intended that a City taxpayer should be given the same type of benefit allowed federal taxpayers, *i. e.*, an averaging of income over a period of years during which the tax was in effect. The reference in § 2.0(8) to § 172 of the Code is for general guidance and is not so inflexible as to require a non-intended result.

■ The court does agree with the City that the computation of City taxable income requires, at least initially, the use of the figures *reported* on the federal return. Thus, if a particular method of depreciation is employed in the calculation of federal taxable income, that same method (and consequently the same figure) must be used in computing City taxable income. Similarly, the same loss figures *reported* on the federal return must be *reported* on the City return, no variances other than those specifically provided for in R 46–2.0(8)(a)–(i) are permitted.

■■ The mere fact, however, that the reported figures must be the same does not *ipso facto* mandate that their *application* be the same. Section 2.-0(8)(f) reads, "A net operating loss deduction shall be *allowed* which shall be the same as the net operating loss deduction *allowed* under section one hundred seventy-two . . . ." (Emphasis supplied.) If for some reason a taxpayer chose not to apply a reported loss from a qualifying year as a deduction on his federal return there is no reason why he would not be permitted to apply a different loss from another qualifying year as a deduction under § 172. Brandon v. United States, 204 F.Supp. 912 (N.D.Ga.1962); *contra*, Rev.Ruling 218, 53–2 Cum.Bull. 176. Consequently, Avien's post-January 1, 1966 and 1969 and 1970 losses are losses which are "allowed" under § 172 and consequently may be used as deductions against City income under § 2.0(8)(f).[5] If the legislature had intended the strange result urged by the City, it would have used the phrase "actually taken under section 172" instead of the phrase "allowed under section one hundred seventy-two", which it did use.

■ Furthermore, if in fact § 2.0(8) means that the identical loss used on the federal return must be used on the City return, the language of § 2.0(8)(f)(3), *i. e.*, "such deduction shall not exceed the deduction for the taxable year allowable under section one hundred seventy-two . . . .", would be superfluous. If the identical loss must be used, obviously it could not be greater than itself.

■ The City's reliance on the subchapter S exception of § 2.0(8)(f), as supportive of the proposition that the

4. Similarly, a corporation which at present is located out of the City and has incurred an operating loss in its last fiscal year would, if it also sustained a loss in its first year in the City, risk having to pay City tax on income earned in its second fiscal year in the City because it would have to use the pre-City loss as an offset on its federal return and consequently, according to the City, also on its City return. This situation would

certainly act as a disincentive to a corporation contemplating a move to the City and could hardly have been intended by the drafters of the City tax law.

5. During oral argument the City indicated that it would not even permit Avien to amend its 1968 federal return to waive 1963, 1965 and pre-January 1, 1966 losses and substitute therefor post-January 1, 1966, 1969 and 1970 losses.

only intended deviations from reported federal income are those specifically enumerated, is misplaced. Under 26 U. S.C. § 1373, taxable income of a subchapter S corporation is calculated without regard to § 172 deductions. The obvious reason for that is that net income or loss of those corporations is immediately passed through to the stockholders and appears on their individual returns. There are, therefore, no corporate losses to be carried forward or back. The correlative provision of the federal carryforward and carryback loss section, § 172(h), similarly provides that subchapter S losses are to be disregarded for the purpose of that section. If, therefore, § 2.0(8)(f) did not specifically provide for the subchapter S exception, a subchapter S corporation would not be entitled to carryback or carryforward losses on the City return since such losses are specifically not "allowed under section one hundred seventy-two." As indicated above, post-January 1, 1966 losses are allowed under § 172 even if there are sufficient pre-January 1, 1966 losses and there is therefore no need for a specific exception to that effect in § 2.0(8)(f).

Nor will the legislature's obvious intention to conform the City tax law to the federal law in order to facilitate the auditing procedure be frustrated by this holding. As presently constituted the City return (line 9, schedule B) asks merely for a dollar figure representing the "New York City net operating loss deduction." The return seeks no information as to the identity of the loss year or years from which this figure is derived. Presumably, if the City auditors want to know how a taxpayer arrived at the reported figure, they will request copies of the taxpayer's federal returns. A brief review of the losses reported on the applicable federal returns will reveal if the taxpayer is entitled to the loss deduction claimed on the City return.[6]

Similarly, this holding does not interfere with the legislature's implicit desire

that the initial burden of ascertaining the accuracy of the reported losses remain on the federal government. The City's argument that the federal government has no incentive to audit years in which losses, which are not used as carrybacks, are reported strikes the court as disingenuous. Without auditing those years, the federal government does not know whether in fact the taxpayer properly has losses or profits for those years.

Thus, to adopt the construction urged by the City would do violence to a clear legislative intent to confer upon City taxpayers the benefit of an income averaging system while accomplishing no useful purpose with respect to the administration of the tax.

## II.

As a secondary argument, the City maintains that the burden of proving its entitlement to deductions for losses incurred in the periods of January 1, 1966 to June 30, 1966 and fiscal 1969 and 1970 is on Avien and that Avien did not satisfy that burden in the bankruptcy court. In that court Avien introduced into evidence copies of its 1969 and 1970 federal tax returns. Additionally, Avien's comptroller testified that a cursory examination of Avien's books and records for fiscal 1966 revealed that $125,000 (with a 10–20% margin of error) of Avien's total loss for that year was incurred after January 1, 1966. The City's position is that in order to sustain its burden of proof, Avien was obliged to produce its books, records and supporting documents relevant to the periods in question. Avien having failed to do so, the City urges that the findings of the bankruptcy judge expunging its claim for general corporation tax should be reversed as clearly erroneous.

While the burden of proof with respect to deductions claimed is normally on the taxpayer, Administra-

change made by federal taxing officials in the taxpayer's federal return.

tive Code, City of New York § R46–70.-0(5); People ex rel. Kohlman & Co. v. Law, 239 N.Y. 346, 146 N.E. 622 (1925), that is not the case in bankruptcy proceedings where the burden of establishing its claim rests on the government. In re Gorgeous Blouse Co., Inc., 106 F. Supp. 465 (S.D.N.Y.1952). The government is aided, however, by a strong presumption which arises in its favor by the filing of a sworn proof of claim; a *prima facie* case is established and the burden of going forward with rebutting evidence is on the debtor. ˉIn re Garfield Bag & Stationery Co., Inc., 42 F. Supp. 708, 710–11 (S.D.N.Y.1941); In re Bradley, 16 F.2d 301, 302 (S.D.N.Y. 1926). See also Bankruptcy Rule 301(b). The ultimate burden of persuasion remains on the government. In re Gorgeous Blouse Co., Inc., *supra,* 106 F. Supp. at 465.

Thus, the City here established its *prima facie* case when it filed its sworn proof of claim. The question is whether Avien sufficiently rebutted the presumption arising from that filing so as to shift the burden of going forward back to the City.

By its own admission, the City relies heavily, almost exclusively, on the figures reported on a taxpayer's federal return, and their accuracy as guaranteed by federal audits, in computing the taxpayer's City tax liability. It would thus seem manifestly unfair to hold that in a bankruptcy proceeding the debtor must offer more than the City normally relies on itself.

Moreover, if the City questioned the accuracy of the figures reported on the federal returns the burden of at least so indicating was on the City, particularly in view of the fact that the City itself audited Avien's books and records for the periods in question. Avien's comptroller testified in the bankruptcy court and could have been cross-examined as to the accuracy

of the 1969 and 1970 federal returns. The City could not properly remain silent below and raise now for the first time an unsupported challenge to Avien's 1969 and 1970 federal returns. The rapid administration of debtor's affairs would, indeed, be ˙ill served by sanctioning such procedure. Consequently, the court holds that Avien sufficiently rebutted the City's presumption by offering into evidence copies of its 1969 and 1970 federal tax returns, which indicated losses of $165,427.60 and $337,177.85.[7]

Accordingly, the decision of the bankruptcy judge expunging the City's claim for general corporation tax is affirmed.

So ordered.

---

7. Since the 1969 and 1970 losses are more than sufficient to offset Avien's 1968 income of $282,598.52 it is not necessary to decide the sufficiency of the proof offered with respect to the portion of Avien's 1966 loss occurring after January 1, 1966.