### In the Matter of AVIEN, INC., Debtor.

### The CITY OF NEW YORK, Appellant,

### v.

### AVIEN, INC., Appellee.

### No. 271, Docket 75–5005.

United States Court of Appeals, Second Circuit.

Argued Oct. 24, 1975.

Decided March 10, 1976.

Jules V. Speciner, Great Neck, N. Y., for appellee-debtor.

Before MOORE, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

MOORE, Circuit Judge:

The City of New York ("City") appeals from an order of the District Court, 390 F.Supp. 1335, affirming a decision of the bankruptcy judge expunging the City's claim against the bankrupt, Avien, Inc. ("Avien")[1] for allegedly unpaid corporation taxes in the amount of $17,789.32. The claim is predicated upon the following undisputed facts and the sole legal issue is the application of the loss carryback and carryover provisions of the City's General Corporation Tax, Administrative Code of the City of New York, § R46–2.0(8)(f),[2] which in turn basically follow the federal income tax provisions on the subject.[3]

## I.

Avien's fiscal year ended June 30th. From the year ending June 30, 1963 it had a checkered financial career, and sustained the following losses:

| Fiscal year ending | Taxable income (loss) |
| --- | --- |
| 1963 | $(762,423.73) |
| 1965 | (156,856.34) |
| 1966 | (993,529.48) |
| 1969 | (165,427.60) |
| 1970 | (337,177.85) |

The year 1968, in contrast, showed a profit reported respectively on its federal and local tax returns as $282,598.52 (U.S.) and $286,969.82 (City). As the result of a City audit in 1973 of Avien's books for the period January 1966 through December 24, 1970, the City claimed that a corporate income tax was due of $17,789.32 based on Avien profitable 1968 year but without allowance

Samuel J. Warms, New York City (W. Bernard Richland, Corp. Counsel, Raymond Herzog, Cornelius F. Roche, New York City, of counsel), for appellant.

1. Avien filed a petition in December, 1970, for an arrangement under Chapter XI of the Bankruptcy Act.

2. The Administrative Code of the City of New York (Administrative Code) § R46–2.0(8) reads in pertinent part:

"Entire net income" means net income from all sources which shall be the same as the taxpayer's federal taxable income . . . .

(f) A net operating loss deduction shall be allowed which shall be the same as the net operating loss deduction allowed under section one hundred seventy-two of the internal revenue code . . . .

3. Internal Revenue Code § 172. See n. 8, infra.

for the large losses sustained in the surrounding years.

To avoid a result which at first glance would seem to be obvious, namely, that the losses sustained on either side of 1968 would more than wipe out a 1968 income or tax thereon,[4] the City resorts to an ingenious but untenable theory.

The City adopts as an unsupported hypothesis the assumption that under the federal law Avien must first apply its earliest (1963) loss to its 1968 income and argues that, until such loss is actually taken, no other yearly losses may be considered. Therefore, the City would ignore the carryovers of 1965 and 1966 and the carrybacks of 1969 and 1970.[5] But having theoretically applied the 1963 loss, it straightaway claims that Avien is disqualified from taking such a loss because it runs afoul of the City's Administrative Code which reads "such deductions shall not include any net operating loss sustained during any taxable year in which the taxpayer was not subject to the tax imposed by this part, * * * ". § 2.0(8)(f). The City argues that its tax was not effective until January 1, 1966,

*ergo,* no loss prior to this date can be considered.

## II.

The City's tax code provides that net income shall be "the same as" that which is reported on a taxpayer's federal return, and that net operating loss deductions shall also be "the same as" deductions allowed under § 172 of the Internal Revenue Code ("Code").[6] However, this does not mean, and the District Court so held,[7] that the reported figures on city and federal returns must be identical. Under the Code, it is not the identity of the loss deduction figures which is required, but rather the identity of permissible computation procedures used to calculate those figures.

Section 172 of the Code outlines the basic deduction allowed for net operating loss, and includes carryback and carryover provisions to ensure accurate and fair income averaging over a period of years. Under the Code the taxpayer is permitted to carry losses back three years, and forward five years. In that section it is expressly provided that carryovers and carrybacks shall be to "taxable" years within the permissible eight-year span.[8] Utilization of losses to or

---

4. Losses for the years 1963, 1965 and 1966 totalled $1,893,063.78. Losses for the years 1969 and 1970 totalled $502,605.45.

5. Avien claims losses from the earliest qualifying year on its federal return for 1968. These pre-1966 losses did not, however, appear on Avien's 1968 City tax return. Instead, Avien used post-1966 losses as the basis for its net operating loss deduction on the City return.

6. *See,* n. 2, *supra.*

7. In Judge Neaher's words,
    "[I]t seems clear that the legislature intended that a City taxpayer should be given the same *type of benefit* allowed federal taxpayers, *i. e.,* an averaging of income *over a period of years during which the tax was in effect.* The reference in § 2.0(8) to § 172 of the Code is for general guidance and is not so inflexible as to require a non-intended result.
    The mere fact, however, that the *reported* figures must be the same does not *ipso facto* mandate that their *application* be the same. . . . If the legislature had intended the strange result intended by the City, it would have used the phrase 'actually taken under section 172' instead of the phrase 'allowed under section one hundred seventy-two', which it did use."
    (App. at 60a–61a) (Emphasis supplied).

8. Section 172 reads in pertinent part:
    § 172 *Net operating loss deduction*
    (a) *Deduction allowed.*—There shall be allowed a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term "net operating loss deduction" means the deduction allowed by this subsection.
    (b) *Net operating loss carrybacks and carryovers.—*
    (1) *Years to which loss may be carried.—*
    (A)(i) Except as provided in clause (ii) and in subparagraphs (D), (E), (F), and (G), a net operating loss for any taxable year ending after December 31, 1967, shall be a net operating loss carryback to each of the 3 *taxable* years preceding the taxable year of such loss.
    \* \* \* \* \* \*
    (B) Except as provided in subparagraphs (C), (D), and (E), a net operating loss for any taxable year ending after December 31, 1955, shall be a net operating loss carryover to each of the 5 *taxable* years following the taxable year of such loss. .
    \* \* \* \* \* \*
    (2) Amount of carrybacks and carryovers. —Except as provided in subsections (i) and (j), the entire amount of the net operating

from the earliest year possible is thus subject to the qualification that all of the years in question be "taxable" years. This qualification is also explicitly incorporated into the Code's computation procedures: subsection (e) of § 172 specifies that "the necessary computations involving any other taxable year [than the one to which the loss is applied] shall be made under the law *applicable to such other taxable year*". (emphasis supplied)

Applying this statutory scheme to Avien's deductions on its City return, it is readily apparent that Avien could not utilize losses

from 1963 because that year was not a "taxable" year under the City tax laws. Similarly, computation of the permissible loss deductions under § 172(e) for the year 1963 would be impossible since there were no City tax laws applicable in that year.

The purpose of the City's adoption of loss carryovers and carrybacks is to give City taxpayers the benefit of income averaging, *not* to exclude them from it. This has been explicitly recognized in several recent New York decisions.[9] In the instant case, conformity of every figure reported on City and federal returns would not only do vio-

---

loss for any taxable year (hereinafter in this section referred to as the "loss year") shall be carried to the earliest of the *taxable years to which (by reason of paragraph (1)) such loss may be carried.* The portion of such loss which shall be carried to each of the other *taxable* years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior *taxable years to which such loss may be carried.*

. . .

\* \* \* \* \* \*

(e) Law applicable to computations.—In determining the amount of any net operating loss carryback or carryover *to* any taxable year, *the necessary computations* involving any other *taxable year shall be made under the law applicable to such other taxable year.* The preceding sentence shall apply with respect to all taxable years whether they begin before, on, or after January 1, 1954. (emphasis supplied)

9. *In Matter of Telmar Communications Corp. v. Procaccino,* 48 A.D.2d 189, 369 N.Y.S.2d 208 (3d Dept. 1975), the Appellate Division held that the taxpayer had not demonstrated that the sum he sought to deduct was "allowable" under § 172 of the Code, but stressed that allowable losses may be used under the State's tax laws to further the purpose of the Code's income averaging provisions. We note especially that the Court in that case spoke of conformity of "practices", not numerical figures:

This enactment is plainly intended to conform operating *loss carryback and carryover practices* with Federal law *in order to assist new businesses and those with fluctuating income.*
369 N.Y.S.2d at 210 (citation omitted)
Even if the requirement of conformity with federal law yielded the outcome which is urged by the City—which we believe it does not—nevertheless, such conformity would not be permitted to prevail at the cost of equity or reasonableness of the result. This view is in accord with the interpretation adopted by the

New York courts. In *Graham v. State Tax Commission,* 48 A.D.2d 444, 369 N.Y.S.2d 863 (3d Dept. 1975), the Court considered New York State's Tax Law § 208, which, like the Administrative Code's § R46–2.0(8), is keyed into federal Code § 172. The *Graham* Court noted that

"[S]trict conformity is impossible in the case of a non-resident since his Federal return reflects his New York as well as non-New York income whereas his New York return reflects only those items of income, gain, loss and deductions which are derived from or connected with New York sources. . . . Accordingly, the regulation of the Tax Commission . . . is unreasonable, arbitrary or capricious, and, therefore, invalid, and any argument of Federal conformity is not sufficient to overcome such a conclusion." 369 N.Y.S.2d at 864 (citation omitted).

The City's citation of *American Can Co. v. State Tax Commission,* 37 A.D.2d 649, 323 N.Y.S.2d 6 (3d Dept. 1971), as authority *contra,* is inapposite. As cited in Bankruptcy Judge Parente's opinion, the Court in *American Can* stated, with reference to New York Tax Law § 208, that

"The language [of the statute] as construed should not 'be at war with the plainest principles of reason and justice'."
323 N.Y.S.2d at 9 (citation omitted).
Moreover, the Court's disallowance of the deduction sought by the taxpayer on the grounds that a parent company could not "acquire net operating losses by way of merger with a subsidiary when the subsidiary was not conducting business in New York prior to merger", 323 N.Y.S.2d at 8, appears eminently reasonable and equitable, in contrast to the circumstances at bar. Finally, the *American Can* decision, like the *Graham* and *Telmar* cases, *supra,* acknowledged that conformance to federal law was intended to serve the purpose of assisting new business or those with fluctuating income. *Id.*

lence to the explicit language of § 172 of the Code, but would produce a result both entirely arbitrary and completely inimical to the equitable goals of income averaging.[10] We do not believe that the framers of § R46–2.0(8), which specifically adopts the federal system of loss carryovers and carrybacks, intended to completely undo the workings and purpose of that system by the disallowance of the calculations made by Avien on its 1968 City return. Accordingly, we hold that Avien's computation of its 1968 net operating loss deduction was proper under § R46–2.0(8).

■ As an additional argument the City has urged this Court to disallow Avien's substitution of loss figures on the grounds that the disparity between federal and City figures would necessitate special audits by the City, which conformity to federal figures would render unnecessary. While we are scarcely anxious to impose administrative burdens upon the City's tax department, nevertheless we believe that substantial justice compels the result which we reach here, and we will not refrain from reaching it on the grounds that the City will be inconvenienced thereby. As appellee pointed out in its brief (at p. 8), if the City chooses to impose a tax, it should bear the burden of collecting that tax.

The equitable purposes of income averaging are plainly served by the interpretation of § R46–2.0(8) adopted below, which accords with both the language and spirit of § 172. The decision of the District Court is accordingly affirmed.

**10.** In applying this principle federal courts have held, for example, that a taxpayer need not carry losses back to the earliest qualifying year if the income in that year derives from capital gains, since capital gains may not be offset by net operating losses. *See, Foster Lumber Co. v. United States*, 500 F.2d 1230 (8th Cir. 1974); *Olympic Foundry Co. v. United States*, 493 F.2d 1247 (9th Cir. 1974); *Callanan Road Improvement Co. v. United States*, 404 F.2d 1119 (2d Cir. 1968); *Chartier Real Estate* *Co. v. Commissioner*, 52 T.C. 346 (1969), *aff'd* 428 F.2d 474 (1st Cir. 1970); *Naegele v. United States*, 383 F.Supp. 1041 (D.Minn.1973). *Contra, Mutual Assurance Society of Virginia Corp. v. C. I. R.*, 505 F.2d 128, 133 (4th Cir. 1974) where the Court nevertheless acknowledged: "[Other] courts that have . . . dealt with this issue have uniformly followed the Tax Court's decision in *Chartier Real Estate* [*supra*, citing cases]."