The **HOSPITAL TRUST LEASING CORPORATION**

v.

**John H. NORBERG, Tax Administrator.**

**No. 82–276–M.P.**

Supreme Court of Rhode Island.

April 16, 1985.

Alfred S. Lombardi, Edwards & Angell, Providence, for petitioner.

Dennis J. Roberts II, Atty. Gen., Donald G. Elbert, Jr., Asst. Atty. Gen., Perry Shatkin, Charles E. Goldkamp, Legal Counsel-Div. of Taxation, for respondent.

## OPINION

WEISBERGER, Justice.

This is a petition for certiorari by the Hospital Trust Leasing Corporation (taxpayer) to review a judgment of the District Court that affirmed a decision by the tax administrator disallowing a deduction claimed by the taxpayer. The facts in this case are not in dispute and have been stipulated by the parties. Those pertinent to this appeal are as follows:

"1. The Hospital Trust Leasing Corporation ('Taxpayer') is a Rhode Island corporation with headquarters at One Hospital Trust Plaza, Providence, Rhode Island.

"2. Taxpayer's only class of stock is entirely owned by Rhode Island Hospital Trust National Bank, a national bank located in Rhode Island.

"3. Taxpayer's business is the leasing of property both within and without Rhode Island.

"4. For the year 1978 Taxpayer allocated its property, receipts and salaries as required by Rhode Island taxing statutes and regulations as follows: Property—32.0761% in Rhode Island; Receipts—31.4608% in Rhode Island; and Salaries— 100% in Rhode Island. The weighted apportionment ratio based on the aforementioned percentages was 54.5123%.

"5. For the years 1971 through and including 1974 Taxpayer filed a Rhode Island consolidated tax return with Washington Row Company and Hospital Trust Corporation. Rhode Island Hospital Trust National Bank was not joined in that consolidation.

"6. For the years 1975 through 1978, Taxpayer filed a separate Rhode Island tax return.

"7. Taxpayer has always filed a consolidated return for federal purposes

with all members of the Hospital Trust Corporation group.

"8. For the years 1971 through 1977, Taxpayer suffered losses on its tax returns as follows:

| | Before Apportionment | After Apportionment |
|---|---|---|
| 1971 | ($237,000) | ($237,000)* |
| 1972 | ($712,000) | ($201,133) |
| 1973 | ($1,305,000) | ($460,963) |
| 1974 | ($2,423,000) | ($1,473,754) |
| 1975 | ($2,763,000) | ($1,685,000) |
| 1976 | ($1,764,000) | ($1,101,000) |
| 1977 | ($978,000) | ($568,000) |

* No apportionment made in 1971.

"9. For the calendar year 1978, Taxpayer had net income of $1,458,000 for federal purposes, and, after apportionment, $800,000 for Rhode Island purposes * * *.

"10. In computing its corporate income tax for Rhode Island for 1978, Taxpayer utilized its tax loss carry forwards from its 1975 tax year, which carry forward eliminated its entire 1978 income for Rhode Island purposes.

"11. Because Taxpayer had no income for Rhode Island corporate income tax purposes, it computed its tax on the net worth method, and that method produced a tax of $5,430. Estimated payments for the year 1978 made by Taxpayer to the Rhode Island Division of Taxation amounted to $13,000.

"12. On January 8, 1980, the Rhode Island Division of Taxation notified Taxpayer that it was not entitled to the benefits of its 1975 net operating losses in 1978 and that its corrected tax liability was $63,986.34 and, therefore, having previously forwarded $13,000, Taxpayer owed an additional $50,986.34 plus interest of $3,059.18 * * *."

The issue in this case is whether G.L. 1956 (1980 Reenactment) § 44-11-11 [1] permits this taxpayer to carry forward its losses of 1975 to offset its income of 1978. We hold that it does and that the calculation urged by the taxpayer of its 1978 income in this case comports with objectives of income averaging that the Legislature sought to achieve by enactment of § 44-11-11.

At trial and in this appeal, arguments advanced by counsel have centered on the appropriate meaning that should be placed on § 44-11-11(b), which states in pertinent part that

"[a] net operating loss deduction shall be allowed which shall be the same as the net operating loss deduction allowed under § 172 of the internal revenue code of 1954 * * *." [2]

1. General Laws 1956 (1980 Reenactment) § 44-11-11 provides in pertinent part:

"(b) A net operating loss deduction shall be allowed which shall be the same as the net operating loss deduction allowed under § 172 of the internal revenue code of 1954, except that (1) any net operating loss included in determining such deduction shall be adjusted to reflect the inclusions and exclusions from entire net income required by paragraph (a) hereof and § 44-11-11.1, (2) such deduction shall not include any net operating loss sustained during any taxable year beginning prior to January 1, 1975, or during any taxable year in which the taxpayer was not subject to the tax imposed by this chapter, (3) such deduction shall not exceed the deduction for the taxable year allowable under § 172 of the internal revenue code of 1954, and (4) such deduction incurred in a taxpayer's taxable year beginning on or after January 1, 1975 shall not be carried back to a taxable year beginning prior to January 1, 1975."

2. In 1978, Internal Revenue Code § 172 provided in pertinent part:

"(a) Deduction allowed.—There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term 'net operating loss deduction' means the deduction allowed by this subsection.

"(b) Net operating loss carrybacks and carryovers.—

"(1) Years to which loss may be carried.—

"(A)(i) Except as provided in clause (ii) and in subparagraphs (D), (E), (F), and (G), a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss.

The tax administrator's position, which was affirmed by the District Court, is that the guidelines in connection with the federal net operating loss deduction of § 172 of the Internal Revenue Code must be strictly complied with in order to effect the directive of § 44–11–11 that the state and federal laws "be the same." The treasury regulations accompanying the federal provision, the administrator points out, require that losses that a taxpayer wishes to utilize under § 172 to offset and absorb income of an applicable year under the statute must be those "beginning with the loss for the earliest taxable year." 26 C.F.R. § 1.172–4 (1984). From this language, the tax administrator reasons that the federal requirement of utilizing losses from the earliest taxable year would require the taxpayer in this case to offset his 1978 gain with losses from 1971, which was literally taxpayer's earliest taxable year. Nineteen seventy-one was also the taxpayer's earliest loss year in its corporate existence. The use of such a loss from 1971, however, would be disallowed under state law, in view of § 44–11–11(b)(2), which provides that a "deduction shall not include any net operating loss sustained during any taxable year beginning prior to January 1, 1975."

■ We begin our analysis by observing that there can be little doubt of the Legislature's intent to have a taxpayer in Rhode Island obtain the same advantages under § 44–11–11 as would be available under federal § 172.[3] Enactment of § 44–11–11, however, was not tantamount to having its provisions mirror or track those of federal § 172 nunc pro tunc. Rather, enactment of current § 44–11–11 carried with it certain restrictions in regard to both the date upon which the statute would become operative and the date after which loss years could

---

```
      *    *    *    *    *    *
```
"(B) Except as provided in subparagraphs (C), (D), and (E), a net operating loss for any taxable year ending *after December 31, 1955,* shall be a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss. Except as provided in subparagraphs (C), (D), (E), and (F), a net operating loss for any taxable year ending after December 31, 1975, shall be a net operating loss carryover to each of the 7 taxable years following the taxable year of such loss.
```
      *    *    *    *    *    *
```
"(2) Amount of carrybacks and carryovers. —Except as provided in subsection (g), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the 'loss year') shall be carried to the earliest of the taxable years to which (by reason of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. For purposes of the preceding sentence, the taxable income for any such prior taxable year shall be computed—

"(A) with the modifications specified in subsection (d) other than paragraphs (1), (4), and (6) thereof; and

"(B) by determining the amount of the net operating loss deduction—

"(i) without regard to the net operating loss for the loss year or for any taxable year thereafter, and

"(ii) without regard to that portion, if any, of a net operating loss for a taxable year attributable to a foreign expropriation loss, if such portion may not, under paragraph (1)(D), be carried back to such prior taxable year * * *."

**3.** Section 172 of the Internal Revenue Code allows a taxpayer who has suffered a net loss for a particular year to offset that loss against taxable income from applicable preceding or following years so as to achieve a form of "income averaging." At the time of the commencement of this action, § 172 provided that net losses could be carried back for up to three years to offset earlier income. Section 172 also provided that net losses could be carried forward for up to seven subsequent years to offset later income. Section 172 was amended by P.L. 97–34, sections 207(a)(1) and 207(a)(2)(A) and currently provides for net losses to be carried forward for up to fifteen years to offset later income. Act of Aug. 13, 1981, Pub.L. No. 97–34, 1981 U.S.Code Cong. & Ad.News (95 Stat.) 172, 225 (codified at 26 U.S.C.A. § 172 (1978)).

The policy reasons behind enactment of § 172 emanate from the desire to set up a mechanism to tax true economic gain of the taxpayer measured over a period of years, rather than to allow the taxpayer to suffer harsh consequences that frequently can occur when a taxpayer's economic activity is viewed solely in a given accounting year.

be utilized in a similar fashion to those under the federal scheme. In these two respects, there is little room for argument that Rhode Island legislators, in adopting the net operating loss deduction, had in mind both the federal statute and a distinctive method by which the federal provisions would become fully operative in this state.[4]

It follows from these observations that if the Legislature intended the benefits of § 172 to be available subject to the modifications made necessary by the effective date of implementation of the Rhode Island statute, then there is no persuasive force to the tax administrator's argument that § 44–11–11 is required to mirror in every precise detail and aspect that of § 172 of the Internal Revenue Code.

■ We agree with the taxpayer that the earliest loss year available to him on his Rhode Island tax return to offset his 1978 income as allowed by § 172 *and* by § 44–11–11 is a loss from 1975. Since § 172 will allow the earliest loss year of taxpayer's preceding seven years to offset the year of taxable gain, and § 44–11–11 modifies that requirement to have the loss year be from 1975 or a subsequent year, taxpayer's election to carry forward a 1975 loss and deduct it from 1978 income was both correct and appropriate under the provisions of § 44–11–11 read in the light of its basic purpose.

Our analysis of this statute is aided by the precedent established by the federal courts in New York when they were presented with nearly the identical issue at bar in the case of *In re Avien, Inc.*, 390 F.Supp. 1335 (E.D.N.Y.1975). *Avien* in-

volved an appeal by the city of New York from a decision of a bankruptcy judge expunging the city's claim against Avien for unpaid corporate taxes. The decision in *Avien* hinged on the proper interpretation of a New York city municipal ordinance that sought, in the context of collecting New York city taxes, to give relief for corporate net operating losses in a similar fashion to that which § 44–11–11 provides in Rhode Island. The language of the *Avien* ordinance bears many similarities to that of § 44–11–11. The ordinance, for example, allowed for the use of net operating loss deductions that were to " 'be the same as the net operating loss deduction allowed under section one hundred seventy-two of the internal revenue code.' " *Avien*, 390 F.Supp. at 1338 (quoting New York City Administrative Code § R46–2.0(8)(f) (1966)). Another portion of the ordinance required that the " 'deduction shall not exceed the deduction for the taxable year allowable under section one hundred seventy-two of the internal revenue code.' " *Id.* Finally, the *Avien* ordinance prohibited the use, for any purpose in connection with offsetting income, of losses incurred in years prior to the adoption of the ordinance in 1966.

In a similar fashion, § 44–11–11 prohibits use of losses in years prior to 1975 to offset gains. In *Avien*, the taxpayer was trying to carry back losses incurred in 1969 and 1970 to offset and absorb taxable income of 1968. The city taxing authority's argument is similar to the contention urged by the Rhode Island tax administrator that the treasury regulations interpreting § 172 require that the taxpayer first carry for-

---

**4.** The distinctive method by which the federal scheme would become fully operative in Rhode Island was specifically established by the Legislature in an accompanying provision of § 44–11–11. Section 2(b), as found in P.L.1974, ch. 200, art. 2, § 2, although it does not appear in the text of the General Laws volume because its provisions are of limited duration, provides that

"[a] net operating loss incurred in a taxpayer's taxable year beginning on or after January 1, 1975 shall only be a carryover; a net operating loss incurred in a taxpayer's taxable year beginning on or after January 1, 1976

shall be a carryback to the preceding taxable year only and any excess shall be a carryover; a net operating loss incurred in a taxpayer's taxable year beginning on or after January 1, 1977 shall first be a carryback to the second preceding taxable year, any excess to be a carryback to the first preceding taxable year and any remaining excess shall be a carryover; and for years beginning on or after January 1, 1978, the provisions of section 1 of this article relating to net operating loss shall apply."

ward his earliest loss year before any other loss year may be utilized to offset income. In *Avien,* following such a course would have required the corporation to abandon its attempt to carry back 1969 and 1970 losses and instead carry forward a loss from 1963 to offset its 1968 income. However, no such loss from 1963 was permitted to be carried forward since pre-1966 losses were prohibited by the city ordinance. In rejecting the New York city taxing authority's position, the Federal District Court noted first that the intention of

> "the [local] legislature in providing for carryforward and carryback loss deductions was to permit a City taxpayer to pay tax on an amount which more accurately reflects his true economic gain over a period of years * * *
>
> "To adopt the City's construction * * * would undermine this legislative intent." *Avien,* 390 F.Supp. at 1339–40.

On appeal, the Court of Appeals for the Second Circuit upheld the District Court by reiterating that

> "[t]he City adopts as an unsupported hypothesis the assumption that * * * Avien must first apply its earliest (1963) loss to its 1968 income and * * * that, until such loss is actually taken, no other yearly losses may be considered." *In re Avien, Inc.,* 532 F.2d 273, 275 (2d Cir. 1976).

In rejecting this theory, the court stated that the result urged by the taxing authority would be "completely inimical to the equitable goals of income averaging." *Id.* at 277. Finally the court concluded:

> "We do not believe that the framers of [the city ordinance] which specifically adopts the federal system of loss carryovers and carrybacks intended to completely undo the workings and purpose of that system by the disallowance of the calculations made by Avien on its 1968 City return. Accordingly, we hold that Avien's computation of its 1968 net operating loss deduction was proper * * *." *Id.*

■ We are persuaded by the reasoning of both federal courts in *Avien* and believe that the principles enunciated therein may be applied to the controversy in the case at bar by analogy. We are convinced that the Rhode Island Legislature, in adopting § 44–11–11, expressed a dominant intent to allow taxpayers the same type of income-averaging methods of calculation afforded under § 172 of the Internal Revenue Code. This intent was obviously subject to the limitations imposed as a result of the effective date of the statute and an express determination that no deduction could be carried back to or forward from a taxable year beginning prior to January 1, 1975. To draw from this limitation the artificial constraints suggested by the tax administrator in a supposed attempt to mirror precisely the terms of § 172 would undermine the Legislature's dominant intent. No act of the General Assembly should be interpreted in such a way as to reach an unreasonable and inefficacious result. *Bassett v. DeRentis,* R.I., 446 A.2d 763 (1982); *Town of Scituate v. O'Rourke,* 103 R.I. 499, 239 A.2d 176 (1968) (applying the rule to ordinances passed by a town council). We therefore hold that under the terms of the statute losses incurred in years prior to 1975 cannot be utilized to reduce income in a subsequent year. Losses incurred in 1975 and thereafter, however, may be carried forward in the manner prescribed by Internal Revenue Code § 172. The determination by the District Court not to allow this taxpayer to carry forward its 1975 loss to offset its 1978 income was erroneous.

For the reasons stated the taxpayer's petition for certiorari is hereby granted. The judgment of the District Court is quashed. The papers in the case shall be remanded to the District Court with our decision endorsed thereon.