In re Arden R. ARNDT, Debtor.

UNITED STATES of America, Appellant,

v.

Arden R. ARNDT, Appellee.

Nos. 94–0088–CIV–ORL–18, 94–0089–CIV–ORL–18.

United States District Court, M.D. Florida, Orlando Division.

Aug. 12, 1996.

Douglas Frazier, U.S. Attorney's Office, Middle District of Florida, Tampa, FL, David N. Geier, U.S. Dept. of Justice, Tax Division, Washington, DC, for appellant.

William Francis Lawless, Sr., William F. Lawless, P.A., Altamonte Springs, FL, for appellee.

## ORDER

G. KENDALL SHARP, District Judge.

This case is before the court on appeal by the Internal Revenue Service (IRS) from a proceeding in the United States Bankruptcy Court for the Middle District of Florida (Case No. 91–0880–BKC–3P3; Adversary Case No. 91–128). In that proceeding, the IRS challenged that debtor Arden Arndt (Arndt), who operated a business named Sod King as a sole proprietorship for the years 1985 and 1986, improperly classified his workers as independent contractors rather than as employees. The bankruptcy court concluded that Arndt had misclassified only three of his workers, and was entitled to taxpayer relief for them under the "Safe Harbor" provisions of 26 U.S.C. § 3401 (1994). On appeal, the government contends (1) that the bankruptcy court improperly placed the burden of persuasion on the IRS; (2) that the bankruptcy court misclassified the workers not classified as employees; and (3) that relief under section 3401 was improper for those workers whom Mr. Arndt misclassified. The court affirms the bankruptcy court's placement of the burden of proof and its classification of Mr. Arndt's workers. However, the court reverses the bankruptcy court's award of taxpayer relief as to the three workers that Mr. Arndt improperly classified.

### I. Facts

The parties do not dispute the factual findings of the bankruptcy court. Mr. Arndt operates Sod King, a grading and sodlaying business that contracts with general contractors, developers and individual homeowners to lay sod and landscape various properties. Mr. Arndt operated Sod King as a sole proprietorship in 1985 and 1986 before incorporating the business in 1987. The tax issues

concern Mr. Arndt's personal liability for Sod King's practices prior to incorporation.

During 1985 and 1986, sixteen people worked for Sod King. In his sod-laying operation, Mr. Arndt employed graders, sodlayers, truck drivers, and one landscaper. In 1986, Mr. Arndt's wife and his sister, Marsha Reynolds, also worked for Sod King as secretary/bookkeepers. Ms. Reynolds operated the business from her home and apparently did not have other employment.

Sod King employed a regular truck driver who picked up sod from sod farms and delivered it to the business's job sites. The truck driver contacted the bookkeeper to coordinate where and when to deliver sod. When Mr. Arndt needed more than one truck, he contacted other drivers who supplied their own trucks to complete the task.

The landscaper worked at his convenience. The other individual workers could decide on a day-to-day basis whether they wanted to work. The graders congregated at a local grocery store, where any employer who needed graders would come. Many of the people who worked for Sod King also worked for other sod-laying businesses. When he needed sodlayers, Mr. Arndt would contact them and tell them the location of the job site and the time to lay the sod. These workers had no regular time to arrive at the job site except that the sodlayers could not begin until the sod had arrived and the grading was complete. Arndt did not provide workers with any training or instruction on how to lay sod; one worker testified that all that was required was remembering to put the "green side up."

Mr. Arndt paid the sodlayers by the pallet, the truck drivers by the load, and the landscaper and graders by the job. Mr. Arndt paid the workers on a frequent and non-uniform basis and not on a regular schedule. Although Mr. Arndt paid to maintain the equipment, he did not pay the workers' expenses. Sod King did not offer employee benefits, such as health insurance, paid vacation or pension plans. In 1986, however, Mr. Arndt paid four sodlayers Christmas bonuses of $25.00 to $55.00.

Although Mr. Arndt retained the right to terminate workers, he never did so. The workers also had the right to terminate their relationship with Sod King at any time, without obligation to finish a job. Workers could hire extra workers without Mr. Arndt's approval and were responsible for paying the extra workers. Workers performed a variety of tasks on a job and worked in teams to achieve the greatest productivity.

Mr. Arndt supplied trucks, a forklift, and a trailer for business use. Ninety percent of one truck's use was generated by Sod King's business purposes, while Sod King utilized another truck for fifty percent of its total use. Mr. Arndt also supplied tools for workers who did not have their own tools. The tools included rakes, machetes, and shovels. Mr. Arndt would provide transportation to the job site if a worker lacked transportation.

During 1985 and 1986, Mr. Arndt classified and paid his workers as independent contractors. He gave each worker a 1099 form and filed a 1096 form. All workers signed contracts in which they stated that they understood that they were independent contractors and that they were responsible for paying their own taxes. Some of his workers could not read, however. Mr. Arndt testified that other sod-laying businesses classified their workers as independent contractors. Similarly, sodlayers testified that other businesses treated them as independent contractors. Debbie Anthony, an IRS witness with experience in the sod industry, testified that her company classified its workers as employees but she did not testify that there was industry standard with regard to the classification of employees.

In 1988, the IRS audited Arndt and determined that Arndt had misclassified his workers. The IRS assessed unpaid federal taxes for 1985 and 1986 against Arndt for the misclassified workers in the amount of $56,-807.49. After the audit, Arndt reclassified his workers.

## II. Legal Discussion

### A. Standard of Appellate Review

A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instruction for

further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. Bankr.R. 8013; *see Goerg v. Parungao (In re Goerg* ), 930 F.2d 1563, 1566 (11th Cir.1991). A district court reviews a bankruptcy judge's conclusions of law *de novo. See Goerg,* 930 F.2d at 1566.

## B. *Burden of Proof*

 On appeal, the IRS first contends that the bankruptcy court improperly placed the burden of proof on it to prove Mr. Arndt's tax liability. The burden of proof with regard to most bankruptcy claims is determined by § 502(a) of the Bankruptcy Code, 11 U.S.C. § 502(a) (1994), which states that claims are allowed unless a party in interest objects, and Fed.Bankr.R. 3001(f), which provides that a proof of claim shall constitute prima facie evidence of the validity and amount of the claim. "The debtor, however, need only present evidence supporting its objection ... to shift the burden of proving the claim back to the claimant." *In re Rasbury,* 141 B.R. 752, 757 (N.D.Ala.1992). In virtually all bankruptcy claims, then, the ultimate burden of persuasion with regard to disputed claims rests with the claimant.

 Generally, however, the IRS is entitled to a presumption of correctness as to the determination of what taxpayers owe the government in taxes. "[T]he burden of proof is on the taxpayer to show that the commissioner's determination is invalid." *Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1934). A number of factors have been cited to justify placing the burden on a taxpayer questioning an IRS determination: the presumption of administrative regularity in determining tax burdens; the likelihood that the taxpayer will have greater access than the IRS to the relevant information; and the desirability of bolstering the record-keeping requirements of the Internal Revenue Code. *See United States v. Rexach,* 482 F.2d 10, 16 (1st Cir. 1973).

A number of courts have ruled that they should maintain this presumption of correctness should be maintained in bankruptcy proceedings. *See, e.g., IRS v. Levy (In re Landbank Equity Corp.),* 973 F.2d 265 (4th Cir.1992); *Resyn Corp. v. United States,* 851 F.2d 660 (3rd Cir.1988); *United States v. Uneco, Inc. (In re Uneco, Inc.* ), 532 F.2d 1204 (8th Cir.1976). These courts have concluded that the presence of tax claims in bankruptcy courts rather than district courts should not affect the burden on the taxing authority. The Fourth Circuit has determined that the allocation of the burdens of proof is part of the substantive tax law, which the bankruptcy rules should not supplant absent clear direction from Congress. *Landbank Equity,* 973 F.2d at 270 (citing *Dick v. New York Life Ins. Co.,* 359 U.S. 437, 446, 79 S.Ct. 921, 927, 3 L.Ed.2d 935 (1959)). Looking to the underlying claim, and not the proceeding in which that claim is brought, these courts have concluded that the taxpayer should bear the ultimate burden of proof.

Other courts have deferred to the claims procedures that have been specially established for bankruptcy proceedings. *See In re Fidelity Holding Company, Ltd.,* 837 F.2d 696 (5th Cir.1988) (holding that a state taxing authority must bear the ultimate burden of proof); *In re Placid Oil Co.,* 988 F.2d 554 (5th Cir.1993) (extending this holding specifically to federal tax claims); *In re Avien,* 390 F.Supp. 1335 (E.D.N.Y.1975), *aff'd,* 532 F.2d 273 (2d Cir.1976). Some bankruptcy courts have concluded that the factors justifying the presumption of correctness for IRS determinations were not sufficient to create an exception to the bankruptcy rules because of the differences between typical tax disputes and bankruptcy proceedings. *See, e.g., In re Premo,* 116 B.R. 515, 522–24 (Bankr. E.D.Mich.1990).

The IRS relies primarily on *In re Terrell,* 75 B.R. 291 (N.D.Ala.), *aff'd,* 835 F.2d 1439 (11th Cir.1987). In that case, the IRS alleged that the taxpayer/debtor should bear the ultimate burden of proof in a bankruptcy proceeding determining whether the debtor was a "responsible person" for purposes of 26 U.S.C. § 6672. The IRS wished to assess a penalty against the debtor for willfully failing

to pay a withholding tax owed by the debtor's employer, and the district court determined that the fact that the case arose in bankruptcy court was irrelevant to the issue of the burden of proof.

■ That court's holding, summarily affirmed by the Eleventh Circuit, does not control this case, however. As a bankruptcy court in this circuit has noted, "*Terrell* concerned *who* owed the taxes, not *whether* the taxes were owed." *In re Rasbury*, 130 B.R. 990, 1002 (Bankr.N.D.Ala.1991) (emphasis in original). Granting a taxing authority such as the IRS a presumption of correctness to their claim ignores the differences between a typical district court or tax court proceeding, where only one claim is at issue, and a bankruptcy proceeding, where many claims are subject to the court's determination. The nature of a bankruptcy claim involves serving all of a debtor's assets to the court, which then determines which claimants should get what amount of the debtor's assets. In bankruptcy, the IRS is not litigating against the debtor but against the other claimants who are each vying for their share of the debtor's assets. As opposed to a situation where only the IRS and the taxpayer are involved, fairness dictates that in bankruptcy proceedings courts should treat these claimants equally. *Accord In re Poiroux*, 167 B.R. 980 (Bankr.S.D.Ala.1994); *In re Rasbury*, 141 B.R. 752 (N.D.Ala.1992). Accordingly, this court concludes that the bankruptcy court's placement of the ultimate burden of proof with the IRS was proper.

C. *Classification*

■ The bankruptcy court determined that Sod King did not possess an employer-employee relationship with its sodlayers, graders and landscaper, but that the company's secretary/bookkeeper and truck driver were employees under the law's definition. Although this court may set aside findings of fact only if they are clearly erroneous, the bankruptcy court's determinations of the employee status of Arndt's workers are subject to *de novo* review by this court. *In re Goerg*, 930 F.2d at 1566; *Breaux and Daigle, Inc. v. United States*, 900 F.2d 49, 51 (5th Cir.1990).

■ The Internal Revenue Code relies on the common law definition to specify who is an employee for federal tax purposes. 26 U.S.C. § 3121(d)(2) (1994). The relevant federal regulation notes generally that an employer-employee relationship exists when the employer "has the right to control and direct the individual who performs the services, . . . not only as to what shall be done but how it shall be done." 26 C.F.R. § 31.3121(d)-1(c)(2). Courts in deciding this issue have developed a substantial list of factors to evaluate the relationship. *See, e.g., United States v. Silk*, 331 U.S. 704, 712–19, 67 S.Ct. 1463, 1467–71, 91 L.Ed. 1757 (1947); *In re Compass Marine Corp.*, 146 B.R. 138, 148–51 (Bankr.E.D.Pa.1992); *In re Rasbury*, 141 B.R. at 759. Included are the following:

1. Instruction
2. Training
3. Integration
4. Services rendered personally
5. Hiring, supervising and paying assistants
6. Continuing relationship
7. Set hours of work
8. Full time required
9. Doing work on employer's premises
10. Order or sequence of work
11. Oral or written reports
12. Payment by hour, week, or month
13. Payment of business and/or travel expenses
14. Furnishing of tools and materials
15. Significant investment
16. Realization of profit or loss
17. Working for more than one firm
18. Making service available to general public
19. Right to discharge
20. Right to terminate
21. Intention of the parties
22. Skill required
23. Providing workers' compensation or other insurance
24. Industry practice or custom
25. Written signed independent contractor agreements

*Compass Marine,* 146 B.R. at 148–51. No single factor is determinative of the result. Rather, the court must consider all of the circumstances in making its decision. *Silk,* 331 U.S. at 719, 67 S.Ct. at 1471. This list is " 'intended [to serve] as an initial guide for the determination' whether an employer-employee relationship exists." *Breaux and Daigle,* 900 F.2d at 51 (quoting *United States v. W.M. Webb, Inc.,* 397 U.S. 179, 194, 90 S.Ct. 850, 857–58, 25 L.Ed.2d 207 (1970)).

The bankruptcy court found that the sodlayers, graders and landscaper were properly classified as independent contractors under this common law test, and the court agrees with the bankruptcy court's analysis. Many of the factors identified by other courts support Mr. Arndt's classification of his workers as independent contractors. Mr. Arndt did not instruct or train his workers, and the workers did not complete all of the work personally. The workers had the authority to hire additional workers and pay the additional workers themselves. Mr. Arndt did not specify the hours that these individuals should work and they were not paid on a regular basis. The evidence demonstrates that the sodlayers and graders made their services available to other contractors and that they in fact performed services for other contractors.

The evidence in bankruptcy court suggested that the industry custom was to hire these workers as independent contractors, and all of the workers signed agreements saying. they would be paid as independent contractors. Mr. Arndt did not provide any of the workers with benefits associated with an employer-employee relationship except for the apparently isolated incident of paying Christmas bonuses to four workers in 1986. Mr. Arndt did provide some equipment to these workers and the work did require a certain amount of integration among the workers. However, these factors by themselves are not sufficient to persuade the court that Mr. Arndt had an employer-employee relationship with the sodlayers, graders and landscaper who worked for him. The court finds that Mr. Arndt properly classified these workers as independent contractors.

However, with regard to Marsha Reynolds and Anna Arndt, who served as Sod King's secretary/bookkeepers, and Willie Huff, who acted as Sod King's primary truck driver, the court agrees with the bankruptcy court that the multi-factor analysis does not justify Mr. Arndt's classification of them as independent contractors. The evidence presented at trial demonstrates that Mr. Arndt exercised greater control over these workers and that Mr. Arndt required close coordination among these individuals. Mr. Arndt supplied Huff with a truck and fuel and specified when Huff would work. Reynolds only worked in the Sod King office. Also, none of these three people could work for other businesses. For these reasons, the court affirms the bankruptcy court's holding that these three individuals should have been classified as employees.

## D. *Relief from Misclassification*

Finally, the IRS contends that the bankruptcy court improperly provided taxpayer relief under 26 U.S.C. § 3401 to Mr. Arndt. As the bankruptcy court noted, this section was created by Congress to provide a "safe harbor" to employers who had misclassified their employees as independent contractors in good faith. That section provides that if an employer did not treat a worker as an employee and filed all of his tax returns in a manner consistent with the worker not being an employee, "then for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee." 26 U.S.C. § 3401 (note). The parties do not dispute that Mr. Arndt meets this requirement. The statute then sets forth that a taxpayer

> shall in any case be treated as having a reasonable basis for not treating an individual as an employee for a period if the taxpayer's treatment of such individual for such period was in reasonable reliance on any of the following:
>
> (A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) a past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged.

*Id.* Because the court holds that Mr. Arndt's classification of his sodlayers, graders and landscaper was proper, this section only applies to Mr. Arndt's classification of his secretary/bookkeepers and his truck driver.

The IRS maintains that Mr. Arndt did not have a reasonable basis for classifying these employees as independent contractors. As the bankruptcy court noted, Mr. Arndt has the burden of establishing his entitlement to relief under this "safe harbor" provision. *See In re McAtee*, 115 B.R. 180, 182 (N.D.Iowa 1990). Though Mr. Arndt produced evidence to justify his reasonable basis for classifying the other workers as independent contractors, he has not established any legitimate reason for so classifying the three employees. Mr. Arndt's only explanation for his misclassification at trial was that he relied on the advice of his accountant. However, an accountant's advice is not the type of "technical advice" that can serve as a basis upon which a taxpayer can reasonably rely. *See In re Compass Marine*, 146 B.R. 138, 154 (Bankr.E.D.Pa.1992) (holding that the provision referred to IRS rulings or

treatment). Mr. Arndt argues that he misclassified only a small percentage of his workers, but that fact alone cannot justify according him relief for the employees he classified incorrectly. The court recognizes that the "safe harbor" provision should apply in certain situations where an employer has made incorrect classifications, but Mr. Arndt has failed to present any reasonable basis for classifying these three workers as independent contractors. Therefore, the court reverses that portion of the bankruptcy court's order.

## III. Conclusion

The court concludes that the bankruptcy court properly placed the burden of persuasion on the IRS for establishing Mr. Arndt's tax liability and that the bankruptcy court correctly determined that Mr. Arndt misclassified only his secretary/bookkeepers and his truck driver as independent contractors. However, the court determines that Mr. Arndt did not prove that he met the conditions for the "safe harbor" provision for those three employees and therefore Mr. Arndt is liable for any unpaid employment taxes for them. The court remands this case to the bankruptcy court to proceed in a manner consistent with this order.